**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| VALOY S. WOODS, | ) | No. CV 08-0579-PHX-MHM |
| Plaintiff, | ) | **ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Valoy S. Woods ("Plaintiff") seeks judicial review of the Administrative Law Judge's decision to deny Plaintiff's claim for disability insurance benefits pursuant to § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g). Currently pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. #11) and Defendant Michael Astrue's ("Defendant") Cross-Motion to Remand and in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. #21).

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. on January 23, 2004 (Administrative Record ("AR") 67-69) and for Supplemental Security Income (SSI) on June 8, 2004. (AR 578-80). Plaintiff alleged an onset date of disability of October 31, 2003 based on physical and mental impairments including fibromyalgia, spasmodic dysphonia

neurological voice disorder, fatigue, knee pain, and depression. On June 20, 2006, a hearing was held before Administrative Law Judge ("ALJ") Joan G. Knight (AR 591-636). The ALJ issued an unfavorable notice of decision on December 26, 2006. (AR 29-39). The ALJ denied Plaintiff's application for a period of disability and disability insurance benefits under sections 216(I) and 223(d) of the Social Security Act. (AR 17-23). The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Defendant's final decision on February 19, 2008 (AR 11-13).

Plaintiff initiated this action on March 26, 2008. Plaintiff seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g). (Dkt. #11). After consideration of the pleadings, the record, and the applicable law, the Court issues the following order.

## II. BACKGROUND

### A. Plaintiff's Medical History

Plaintiff has not worked since October 31, 2003 (AR 37, 67), the date that she alleges she became disabled. (AR 67). Plaintiff suffers from spasmodic dysphonia, fibromyalgia, and mental impairments. (AR 193, 535, 534, 530, 526, 525). Plaintiff's medications have included Wellbutrin, BuSpar, Zanax p.r.n., and Motrin. (AR 192).

Dr. Thad E. Bartell treated Plaintiff between January 15, 2004 and August 4, 2005 for her vocal problems (AR 242-55). On February 3, 2004 Dr. Bartell confirmed a diagnosis of spasmodic dysphonia via results obtained after a videolaryngoscopy was performed. (AR 250). Plaintiff was treated with Botox injections, the only known treatment for the condition (Id.).

Dr. Lucinda Michel treated Plaintiff between January 8, 2004 (AR 275) and around August 30, 2004 (AR 256) at the Mesa Family Medical Center after Plaintiff sought treatment there for depression and anxiety. (AR 298). Dr. Michel found that Plaintiff's pain is at the moderately severe level and that it seriously affected her ability to function. (AR 427, 419). Dr. Michel diagnosed Plaintiff with fibromyalgia (AR 535, 534, 530, 526, 525), vocal cord dysfunction (AR 265, 264, 261, 258, 257, 539, 538, 537, 536, 535, 534, 533, 532, 531, 530, 526, 525, 523), back pain or strain (AR 265, 264, 261,

258, 257, 539, 538, 537, 536, 533, 532, 531, 529, 525, 522), and depression/anxiety (AR 265, 264, 261, 258, 257, 539, 538, 537, 536, 535, 534, 533, 532, 531, 530, 529, 526, 522, 523).

Plaintiff was also treated for mental impairments by psychiatric nurse practitioner, Mary Cordell, beginning on February 19, 2004 (AR 291-95) through February 15, 2005 (AR 516). Dr. Wayne R. General performed a psychological consultive examination on Plaintiff on June 10, 2004 (AR 199-206) and diagnosed her with major affective disorder, reactive to Plaintiff's physical conditions with psychotic features and anxiety disorder (not otherwise specified) (AR 203). Dr. George O'Brien performed a consultive examination on Plaintiff on June 8, 2004 (AR 191-98) and diagnosed her with anxiety/depression syndrome, cervical spinal myosfascial disorder, and spastic larynx (AR 198).

Dr. Lee Ann Kelly at the Mayo Clinic saw Plaintiff on February 15, 2005 (AR 490-93) and diagnosed her with major depression recurrence, generalized anxiety disorder, panic disorder without agoraphobia, phobias. (AR 492). Plaintiff was treated at the Marc Center Behavioral Health Services between April 1, 2005 and June 14, 2006 (AR 548-77). At an Annual Psychiatric Update on February 28, 2006, Plaintiff was assessed as "currently stable, operating at baseline." (AR 554). Terry Surma, a nurse practitioner, diagnosed Plaintiff with a mood disorder not otherwise specified on April 25, 2005 with a GAF score of 50. (AR 559). At an annual review in February 2006, she diagnosed Plaintiff with a depressive disorder not otherwise specified with a GAF score of 75. (AR 554).

On July 7, 2004, Dr. Hughes conducted a Physical Residual Functional Capacity Assessment at the request of the Agency. (AR 215-22). He concluded Plaintiff could occasionally lift and carry 50 pounds, frequently lift 25 pounds, stand and/or walk for six hours, sit for six hours, and could occasionally climb ladders/ropes/scaffolds (AR 216-17), and that she was probably unable to do steady phone work. (AR 219). Wayne Winn, M.D., completed a Psychiatric Review Technique on July 9, 2004. (AR

223-36). Dr. Winn concluded that Plaintiff had moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; and mild difficulties

On July 7, 2004, Dr. Hughes conducted a Physical Residual Functional Capacity Assessment at the request of the Agency. (AR 215-22). He concluded Plaintiff could occasionally lift and carry 50 pounds, frequently lift 25 pounds, stand and/or walk for six hours, sit for six hours, and could occasionally climb ladders/ropes/scaffolds (AR 216-17), and that she was probably unable to do steady phone work. (AR 219).

Dr. Wayne Winn completed a Psychiatric Review Technique on July 9, 2004. (AR 223-36). Dr. Winn concluded that Plaintiff had moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (AR 233).

**B.     Hearing Testimony**

On June 20, 2006, the ALJ conducted a hearing on Plaintiff's application for disability benefits. (AR 29, 594). Plaintiff and Sandra Richter, a vocational expert, testified during the hearing. (AR 593).

Plaintiff testified that she has two children, ages 18 and 20, and that custody battles with their father had contributed to her depression. (AR 605). Plaintiff had a valid driver's license, but she rarely drove because she did not own a vehicle and her hand went numb and became painful. (AR 606). Plaintiff was first diagnosed with spasmodic dysphonia, which caused her to have a "breathy" and "whispery" voice, in May 2003. (AR 607). Plaintiff stated that fibromyalgia caused pain in most of her muscles, neck, lower back, legs and arms. (AR 611). Plaintiff stated she experienced migraine headaches three-four times per month. (AR 612). Plaintiff suffered whiplash in two separate accidents in October 2000 and April 2001. (AR 617). Plaintiff has experienced depression since 1980. (AR 618). Plaintiff stated she read, watched television, and used a computer. (AR 620-21). She borrowed a car when she needed to grocery shop. (AR 621). Plaintiff stated she could sit one hour and walk five to ten minutes because her knees ached. (AR 621-22). She stated she could stand for one-half hour and could lift and carry

1 about ten to fifteen pounds. (AR 622). Plaintiff stated she experienced anxiety around
2 people. (AR 624).

3 Sandra Richter, a vocational expert, testified during the hearing that Plaintiff's
4 residual functional capacity (RFC) precluded her from performing her previous work.
5 (AR 629). The VE further testified that, based on the hypothetical presented by the ALJ
6 of an individual with Plaintiff's educational and vocational background, who could
7 perform work at the light exertion level with restrictions to occasionally climbing ladders,
8 ropes or scaffolds, kneeling, crouching, and crawling, and with limited vocal volume,
9 Plaintiff could perform sedentary unskilled work as a cashier and as a light unskilled
10 parking lot attendant of which there were significant numbers available in Arizona and
11 the national economy. (AR 626-32). Plaintiff's attorney added the specific definitions
12 and limitations assessed by Dr. General as part of the psychological consultative
13 examination to the ALJ's hypothetical, at which time the vocational expert testified that
14 those limitations "would preclude work." (AR 634).

**C.** **ALJ's Conclusion**

16 On December 26, 2006, the ALJ denied Plaintiff's claim for disability insurance
17 benefits. (AR 39). The ALJ found that Plaintiff was not disabled as defined under the
18 Social Security Act, at any time through the date of the decision. (Id.). The ALJ's
19 decision was based on the June 20, 2006 hearing, and the requisite five-step sequential
20 evaluation for determining whether an applicant is disabled under the Social Security Act.
21 See 20 CFR §§ 404.1520 and 416.920. (AR 29-40).

22 At step one, the ALJ found that Plaintiff had not engaged in ay substantial gainful
23 activity since October 31, 2003, the alleged onset date. (AR 30). At step two, the ALJ
24 found that Plaintiff had the severe impairments of spasmodic dysphonia of the larynx,
25 fibromyalgia, bilateral carpal tunnel syndrome-newer onset mild, obesity, migraine
26 headaches, moderate degenerative disc diseasecervical, mood disorder not otherwise
27 specified, panic disorder/social phobia and mild osteoarthritis right knee. (Id.). At step
28 three, the ALJ found that the severity of the Plaintiff's impairments, considered singly or

in combination, does not medically meet or equal the criteria for any listed impairments of 20 C.F.R. Part 404, Subpart P, App. 2. (Id.).

Before considering step four of the sequential evaluation process, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a reduced range of light exertional unskilled work. Specifically, the ALJ found that Plaintiff could: lift 25 pounds occasionally and ten pounds frequently; stand for one hour at a time and two hours in an eight-hour day; walk for one hour at a time and three hours in an eight-hour day; and sit for a total of one hour at a time and three hours in an eight-hour day. (AR 38). The ALJ further found that Plaintiff had limited ability to engage in fine manipulation with her bilateral hands; that she could engage in only occasional bending, stooping, and reaching; that she was precluded from squatting, climbing and crawling; that she must avoid any exposure to unprotected heights, marked changes in humidity/temperature, fumes and odors; and that she could have only mild exposure to moving machinery and driving automotive equipment. (Id.).

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work, that she was a younger individual, that she had a high school education, and that she had no skills that would transfer to jobs within her RFC. (Id.). At step five, the ALJ found that an individual with Plaintiff's characteristics and RFC could perform sedentary unskilled work as a cashier (with a sit/stand option and limited to frequent fingering/ keyboarding), of which there were significant numbers available in Arizona and the national economy. (AR 38-39).

Accordingly, the ALJ concluded that Plaintiff was not under a "disability" as defined in the Social Security Act at any time period relevant to her application. (AR 39).

### III. STANDARD OF REVIEW

In order to qualify for disability insurance benefits, an applicant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). In addition, an

applicant must show that his physical or mental impairment is of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

To determine whether an applicant is eligible for disability benefits, the ALJ conducts the following five-step sequential analysis:

(1) determine whether the applicant is currently employed in substantial gainful activity;
(2) determine whether the applicant has a medically severe impairment or combination of impairments;
(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
(5) if not, determine whether the applicant is able to perform other work that exists in substantial numbers in the national economy.

20 CFR §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

The Court must affirm an ALJ's findings of fact if they are supported by substantial evidence and free from reversible legal error. See 42 U.S.C. 405(g); see also Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla," but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See, e.g., Richardson v. Perales, 402 U.S. 389, 401 (1971); Sorenson v. Weinberger, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and weigh both the evidence that supports and detracts from the ALJ's conclusion. See Richardson, 402 U.S. at 401; see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). However, "[i]t is for the ALJ, not the courts, to resolve ambiguities and conflicts in the medical testimony and evidence." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations and quotations omitted). The ALJ may draw inferences logically flowing from the evidence, and "[w]here evidence is

1 susceptible to more than one rational interpretation, it is the ALJ's conclusion which must
2 be upheld." Id. (citation omitted). Nevertheless, "[i]f there is medical evidence
3 establishing an objective basis for some degree of pain and related symptoms, and no
4 evidence affirmatively suggesting that the claimant was malingering, the [ALJ's] reason
5 for rejecting the claimant's testimony must be "clear and convincing" and supported by
6 specific findings." Dodrill v. Shalala, 12 F.3d 915, 917 (9th Cir. 1993) (quotations
7 omitted). And "[w]hen an ALJ's reasons for rejecting the claimant's testimony are
8 legally insufficient and it is clear from the record that the ALJ would be required to
9 determine the claimant is disabled if he had credited the claimant's testimony, [the court
10 must] remand for a calculation of benefits." Orn v. Astrue, 495 F.3d 625, 640 (9th Cir.
11 2007) (quotation omitted). Regardless, "[i]f the evidence can support either affirming or
12 reversing the ALJ's conclusion, [then the Court] may not substitute [its] judgment for that
13 of the ALJ." Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by: (1) selectively relying on and rejecting the assessments of the treating physician, Dr. Michel; (2) selectively relying on and rejecting the assessment of the examining psychologist, Dr. General, and by according "substantial weight" to the assessment of mental capacities by a nonexamining state agency consultant; (3) rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so; (4) limiting an assessment of Plaintiff's mental residual functional capacity to the ability to perform "unskilled work." (Dkt. #14). Plaintiff asks the Court to remand the case for award of benefits. (Dkt. #14). Defendant asks that the Court instead remand this case for further administrative proceedings, asserting that remand is necessary to allow the ALJ to correct inconsistencies in the final decision. (Dkt. #21).

### A. Rejection of Plaintiff's Credibility

Plaintiff contends that the ALJ committed error in rejecting her testimony in the absence of clear and convincing reasons for doing so.

When making a credibility determination, "[a]n ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635. However, if the medical evidence establishes an objective basis for some degree of pain and related symptoms, and there is no evidence affirmatively suggesting that the claimant was malingering, then the ALJ's reason for rejecting Plaintiff's testimony must be clear and convincing and supported by specific findings. See Social Security Ruling 96-7 (stating that adverse credibility determinations must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight)[1]; Dodrill, 12 F.3d at 918 (9th Cir. 1993). General findings are insufficient, rather the ALJ must identify what evidence is not credible and what evidence undermines Plaintiff's complaints. Id.

The adjudicator may not reject Plaintiff's subjective complaints based solely on a lack of objective medical evidence, which fully corroborates the alleged severity of pain. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); Social Security Ruling 88-13. Furthermore, the ALJ may not discredit Plaintiff's testimony as to the *severity* of his symptoms merely because they are unsupported by the objective medical evidence because Plaintiff demonstrated through medical evidence that his underlying impairment could reasonably be expected to produce the symptoms alleged. Lingenfelter, 504 F.3d at 1036.

In the instant case, the ALJ, in rejecting Plaintiff's credibility, stated that Plaintiff's "allegations of chronic pain and fatigue from fibromyalgia . . . are not fully

---

[1] Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996); Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989). Although Social Security Rulings do not have the force of law, Chavez, 103 F.3d at 851, once published, they are binding upon ALJs and the Commissioner. Holohan v. Massanari, 246 F.3d 1195, 1202-03 n. 1 (9th Cir. 2001); Gatliff v. Comm'r of Soc. Sec. Admin., 172 F.3d 690, 692 (9th Cir. 1999).

supported in the medical record." (AR 31). To support her adverse credibility determination that Plaintiff's "impairments . . . in combination do cause [Plaintiff] some pain and restrictions, but not to the extent alleged[,]" the ALJ pointed to the fact that Plaintiff's fibromyalgia was not diagnosed by a rheumatologist, that Plaintiff looked for work, and that Plaintiff engaged in some limited activities. (AR 31-33).

The ALJ noted that fibromyalgia was diagnosed by Dr. Michel, Plaintiff's primary care physician, not a rheumatologist. Id. While a rheumatologist is the appropriate specialty for fibromyalgia, Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004), the Ninth Circuit recognizes that a treating physician's specialty is only one factor to be considered when assigning weight to the physician's opinion. See Benton v. Barnhart, 331 F.3d 1030, 1036 n.1 (9th Cir. 2003) (noting "the primacy of his opinion derives from his superior *vantage* compared to a non-treating physician, even apart from any superior *credentials*") (emphasis in original). The present case is not one where there is a conflict between a treating primary care physician and a relevant specialist; no rheumatologist opined Woods did not suffer from fibromyalgia. Therefore, the lack of a diagnosis by a specialist cannot be used to discredit a treating physician's diagnosis.

The ALJ thought that Plaintiff's attempt to find work detracted from the veracity of the severity of her symptoms. That Plaintiff hoped to work does not mean that in fact she could sustain work. See Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978) (holding a "willingness to try to engage in rehabilitative activity . . . is clearly not probative of a present ability to engage in such activity").

The ALJ relied on the fact that Plaintiff engaged in some limited activities, such as swimming, exercising, clipping coupons, and travel out of state. However, the ALJ did not demonstrate the reported abilities equated with the ability to sustain work on a regular and continuing basis as required by Social Security Ruling 96-8p.[2] Plaintiff's attempt to lead a normal life should not be used to penalize Plaintiff. See Reddick, 157, F.3d at 722.

---

[2] Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling 96-8p, 1996 SSR LEXIS 5, at *1, available at www.ssa.gov/OP_Home/ rulings/di/SSR96-08-di-01.html.

- 10 -

Furthermore, Plaintiff's claimed limitations would have bearing on her credibility "[o]only if the level of activity were inconsistent with [them]." Id. The activities discussed by the ALJ are not inconsistent with the level of pain Plaintiff alleges and thus cannot be used to discredit Plaintiff's testimony.

Notably, Defendant does not argue that the ALJ correctly rejected Plaintiff's credibility. To the contrary, Defendant states that the ALJ's assessment of Plaintiff's residual functional capacity (RFC) was "based [on an] erroneous determination" and that the ALJ did not "consider limitations and restrictions imposed by all of [Plaintiff's] impairments." (Dkt. #21).

As such, the Court finds that the ALJ did not provide clear and convincing reasons, supported by specific findings, to justify her adverse credibility determination. The Court must credit Plaintiff's evidence as true because the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective complaints regarding the severity of his symptoms. Benecke, 379 F.3d at 593.

**B.     Rejection of Treating Physicians' Assessments**

Plaintiff contends that the ALJ erred in rejecting the assessments of Plaintiff's treating physicians and in finding that they lacked objective support because they were premised on Plaintiff's subjective complaints.

"The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn, 495 F.3d at 632 (quoting Reddick, 157 F.3d at 725). The ALJ's role is to resolve conflicts and ambiguities in the record. See Howard ex rel Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Edlund v. Massanari, 253 F.3d 1153,1156 (9th Cir. 2001). If a treating doctor's opinion is not contradicted by that of another doctor, an ALJ may only reject the treating doctor's opinion by giving "clear and convincing reasons supported by substantial evidence in the record." Howard ex rel Wolff, 341 F.3d at 1012. And even if the treating doctor's assessment is contradicted by the opinion of another doctor, an ALJ still may not reject it

without articulating "specific and legitimate reasons supported by substantial evidence in the record." Id.

To meet this burden, the ALJ should provide concrete and detailed summary describing the reasons for rejecting a treating physician's opinion. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) (holding that the ALJ erred by not describing in detail the reasoning for rejecting a treating physician's opinion); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding that an ALJ committed legal error where the ALJ failed to read a doctor's statements in context and selectively relied on the doctor's treatment notes). The Ninth Circuit has consistently rejected ALJ's findings that are vague or conclusory. "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. . . . The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

In addition, the court in Embrey highlighted the importance of the "subjective judgments of treating physicians" because they "properly play a part in their medical evaluations." 849 F.2d at 421-22; see Green-Younger v. Barnhart, 355 F.3d 99, 107 (2d Cir. 2003) (noting that a treating physician's reliance on a claimant's reported symptoms "hardly undermines his opinions as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool") (internal quotation marks, brackets, and citation omitted); Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.").

**1. Treating Physician Michel**

In the instant case, the ALJ rejected the opinion of Dr. Michel, stating that "Dr Michel's evaluations of the claimant, the limited abnormal clinical findings in the medical record, [and] the objective evidence . . . fail to support that the claimant has moderately

severe levels of fatigue and pain of such severity that [Plaintiff] would be unable to sustain work on a regular and continuing basis" and that "the progress notes do not document that the claimant complained of fatigue." (AR 35). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." Lester v. Chater, 81 F.3d at 834. And to reject the claimant's complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Rashad v. Sullivan, 903 F2d 1229, 1231 (9th Cir. 1990) .

The ALJ found that the medical evidence shows the existence of medically determinable impairments that could reasonably lead to Plaintiff's symptoms. (AR 31). Thus, the ALJ must cite "specific, cogent reasons for the disbelief" of plaintiff's testimony. Rashad, 903 F.2d at 1231. Contrary to the ALJ's belief, Plaintiff's treating physician's notes indicate that she complained of fatigue on July 29, 2004 (AR 264) and August 30, 2004 (AR 257) and, consultation notes from the Mayo Clinic state Plaintiff complained of "severe fatigue" or "chronic fatigue." (AR 368, 369, 378, and 379). Therefore, the reason cited by the ALJ, was incorrect and thus legally insufficient. (AR 35).

Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the court may credit that opinion "as a matter of law." Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989). See also, Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (remanding for payment of benefits where Secretary did not provide adequate reasons for disregarding examining physician's opinion). Because the evidence in this case contradicts the ALJ's reasoning for rejecting the opinion of Dr. Michel, the ALJ's reason for rejecting Dr. Michel's opinion was not supported by substantial evidence. Accordingly, the Court finds that the ALJ did not provide the requisite reasons supporting her decision to reject the treating physician's assessments.

**2. Psychologist General**

Plaintiff argues that the ALJ improperly rejected the assessment of Dr. General, a psychological consultative evaluator, finding that Dr. General's conclusions to be based on Plaintiff's subjective allegations, and that the ALJ improperly accorded "substantial weight" to the assessment of mental capacities by a non-examining consultant.

In Ryan v. Comm'r of Soc. Sec., the court stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." 528 F.3d 1194, 1199-1200 (9th Cir. 2008). In the present case, Dr. General did not find Plaintiff unbelievable. Therefore the ALJ did not provide clear and convincing reasons for rejecting Dr. General's testimony. Accordingly, the Court finds that the ALJ did not provide the requisite reasons supporting her decision to reject Dr. General's assessments.

The ALJ assigned "substantial weight" to the Winn assessment form completed by the nonexamining psychologist, making the conclusory statement that the "medical opinion is compelling as it is supported by the great weight of the evidence of record." (AR 36). The ALJ, however, does not state what this evidence is. The Court must assume that the evidence to which the ALJ was referring is the same evidence that the ALJ used to reject Plaintiff's credibility. As discussed in Part IV.A, this evidence was insufficient to reject Plaintiff's credibility. As such, it cannot be used to assign substantial weight to the Winn assessment form and reject the diagnosis of Dr. General.

Aside from the evaluations of the nonexamining physicians, there does not seem to be any evidence that contradicts Dr. General's assessments. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original). Seeing no evidence to justify the adoption of a nonexamining physician's opinion over that of an examining physician, the Court finds that Dr. General's opinion was improperly rejected.

**D.     Limitation of RFC to "unskilled work."**

- 14 -

Plaintiff alleges that the ALJ erred when she limited an assessment of Plaintiff's RFC to the ability to perform unskilled work, stating that the "ALJ decision equated simple work to the [RFC] to perform unskilled work." (Dkt. #14) (internal quotations omitted). Plaintiff also states that once the Court determines that remand of this matter for award of benefits is the proper remedy, remand to correct this error is unnecessary. The Court agrees and does not reach this issue.

### E. Inconsistencies in the Final Decision

Defendant argues that summary judgment is not appropriate because a full and fair development of the facts is still needed. (Dkt. #21). As such, Defendant argues that remand for that purpose is the appropriate remedy. (Id.) Defendant cites to three questions of fact that, according to Defendant, must be resolved. Specifically, Defendant alleges that the ALJ: (1) disregarded a third-party function report; (2) did not provide specific, legitimate reasons for disregarding contradicted opinion of a treating physician that are based on substantial evidence in the record; and (3) improperly failed to consider some of Plaintiff's impairments. (Id.)

### 1. ALJ's Disregard of an Adult-Third Party Function Report

Defendant states that Plaintiff's roommate completed a Function Report Adult-Third Party on April 19, 2004 and that the ALJ made no mention of the report in her decision. (AR 76-84, Dkt. #21). Plaintiff argues that "[t]he ALJ's apparent rejection of the lay witness testimony, absent germane reasons for rejection supported by specific evidence, is legally insufficient." (Dkt. 21).

The Court agrees with Defendant that citing no reason for rejection of testimony is improper. Where the ALJ improperly rejects testimony, the Court "will not remand solely to allow the ALJ to make specific findings regarding that testimony." Lester v. Chater, 81 F.3d at 834 (internal citation omitted). Therefore remand for a determination of this issue is not appropriate.

### 2. ALJ's Disregard of Contradicted Opinion of a Treating Physician Without Providing Specific and Legitimate Reasons that Are Based on Substantial Evidence in the Record.

Defendant states that the ALJ wrongly rejected the opinion of Dr. Michel. (Dkt. #21). The Court agrees with Defendant that the reasons provided by the ALJ for the rejection of Dr. Michel's opinion were not clear and convincing. See discussion Part IV.B.1. Because the ALJ's reasons for rejecting Dr. Michel's opinion were not clear and convincing, remand for determination of benefits, rather than remand to allow the ALJ to set forth better reasons, is the proper remedy. Orn v. Astrue, 495 F.3d at 640. Therefore remand for a determination of this issue is not appropriate.

### 3. ALJ's Failure to Consider Some of Plaintiff's Impairments

Defendant states that, while at step two of the five-step sequential evaluation process, the ALJ found that Plaintiff had fibromyalgia, at step four, the ALJ found that "[t]he medical record fails to show that the claimant has ever been diagnosed with fibromyalgia by a rheumatologist [and that] her allegations of pain, fatigue and limitations from fibromyalgia would not require any further reduction in her [RFC]." (AR 31, Dkt. #21). Correspondingly, Defendant argues that the ALJ wrongly failed to consider limitations and restrictions imposed by some of Plaintiff's impairments. (Dkt. 21). Determination of this issue is not necessary because its determination does not affect the Court's ultimate decision. Therefore remand for a determination of this issue is not appropriate.

## V. CONCLUSION

Remand for benefits is appropriate "where the record has been developed fully and further administrative proceedings would serve no useful purpose." Benecke v. Barnhart, 379 F.3d at 593. Specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be

made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id.; Harman v. Apfal, 211 F.3d 1172 (9th Cir. 2000).

The record reveals that when Plaintiff's evidence is credited as true, a determination of disability can be made without additional administrative proceedings. Benecke, 379 F.3d at 593. The vocational expert testified that if Plaintiff's testimony is credited as true, the ALJ would be required to find Plaintiff disabled. (AR 633-34). Furthermore, the ALJ herself admitted that if she accepted this testimony, she "would have to find that a conclusion of disabled is appropriate." (AR 633).

During the June 20, 2006 hearing, the vocational expert testified that all work would be precluded for an individual with Plaintiff's age, work experience, and educational background, but with the limitations assessed by Dr. General, which were based on Plaintiff's symptom testimony. (AR 199-206). The vocational expert testified that combination of Plaintiff's age, education, work experience, and limitations as assessed by Dr. General "would preclude work." (AR 634). The Court finds that the ALJ improperly rejected Plaintiff's treating physicians' assessments and Plaintiff's testimony regarding the severity of Plaintiff's symptoms and limitations due to his impairments. The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to support his credibility determinations. Accordingly, the Court must credit Plaintiff's testimony as true, and in doing so, the Court finds that Plaintiff is disabled within the meaning of the Social Security Act as of October 15, 2004, the alleged onset date of Plaintiff's disability.

## VI.  SUMMARY

The Court finds that the ALJ improperly rejected Plaintiff's treating physicians' assessments and Plaintiff's testimony regarding the severity of Plaintiff's symptoms and limitations due to her impairments. The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to support her credibility determinations. Thus, the Court must credit Plaintiff's testimony as true, and in doing so,

the Court finds that Plaintiff is disabled within the meaning of the Social Security Act as of October 31, 2003, the alleged onset date of Plaintiff's disability.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is GRANTED. (Dkt. #11).

**IT IS FURTHER ORDERED** that Defendant's cross-motion for summary judgment and requesting the matter to be remanded the Social Security Administration for further administrative proceedings is DENIED. (Dkt. #21).

**IT IS FURTHER ORDERED** that this matter be remanded to the Commissioner of Social Security for an award of benefits.

DATED this 29th day of June, 2009.

_____
Mary H. Murguia
United States District Judge